UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JORGE IRIZARRY,

                Plaintiff,

-against-

MANHATTAN CORRECTIONAL CENTER;
MARTI LICON-VITALE, CHARISMA
EDGE; ROBERT HAZLEWOOD; N.
DIAYE,

                Defendants.

21-CV-5170 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is currently incarcerated at the Metropolitan Detention Center in Brooklyn, New York, is proceeding *pro se* and *in forma pauperis*. Plaintiff asserts claims that arose between 2019 and 2021, when he was detained at the Metropolitan Correctional Center (MCC). By order dated August 17, 2021, the Court directed Plaintiff to amend his complaint to address deficiencies in his original pleading. (ECF 6.) The Court did not receive Plaintiff's amended complaint within the time allowed and dismissed the action. (ECF 7-8.) Thereafter, the Court received Plaintiff's amended complaint (ECF 10), and on February 4, 2022, reopened this action.

    The Court has reviewed Plaintiff's amended complaint and, for the reasons set forth below, dismisses this action.

## STANDARD OF REVIEW

    The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

Plaintiff's amended complaint includes the following allegations. He was detained at MCC from March 2019, until August 2021. (ECF 10 at 4.) Plaintiff suffers from post-traumatic stress disorder and anxiety and, while he was at MCC, he was "neglected medical attention many times." (*Id.*) "They" took Plaintiff "on & off of [his] medications whenever they want[ed] to" do so.[1] Plaintiff "put in numerous 'cop outs' to medical + even the higher ups, which [were] deleted, ignored, or unresponded to."[2] (*Id.*)

In February 2020, "[t]he building went on lockdown and none of the inmates knew why." (*Id.*) For "more than a month," inmates were denied communication with their families, locked in their cells without showers or recreation for 80 hours at a time, and received cold food trays. (*Id.*) Plaintiff eventually learned that an inmate had found a gun in the facility on the same tier where he was housed. (*Id.*) This worsened his anxiety. (*Id.*)

Plaintiff brought his concerns to the attention of his attorney,[3] who shared this information with other attorneys involved in litigation about conditions at MCC.[4] Since Plaintiff reported the conditions at MCC to his attorney, he has been "removed from multiple cells," his

---

[1] It is unclear who Plaintiff alleges is responsible for changing his medication.

[2] All spelling and punctuation in language quoted from the complaint is original.

[3] Plaintiff has pending criminal proceedings in this Court. *See United States v. Irizarry*, No. 17-CR-0283-16 (LAP) (S.D.N.Y.).

[4] Plaintiff attaches to his complaint an evaluation of MCC from an expert who inspected it in connection with *Rodriguez v. Licon-Vitale*, ECF 1:20-CV-03315, 89 (S.D.N.Y. July 2, 2020) (holding that plaintiffs "failed to show a substantial likelihood that they will succeed in proving that the MCC is deliberately indifferent to the serious risks posed by COVID-19.").

mail is "always being tampered with," his family has received envelopes from him with "no mail inside," and his food "smells funny at times." (*Id.*)

From April 26, 2021, to June 8, 2021, Plaintiff was confined in the segregated housing unit (SHU) because Officer Nadel, who "has a personal issue with [Plaintiff] decided to fabricate a lie." (*Id.* at 7.) Officer Nadel falsely charged Plaintiff with being in possession of drugs and alcohol, and the matter was referred to the Federal Bureau of Investigation, which declined to pursue it. At Plaintiff's disciplinary hearing, "[t]he ticket was expunged due to multiple errors and technicalities," but only after he spent "more than a month" in the SHU. (*Id.*) Officer Nadel, who is not named as a defendant in this action, also "verbally assaulted" Plaintiff by calling him "a bitch," suggesting that he was "never [going] home," and telling him not to "drop the soap." (*Id.*) Plaintiff attempted to grieve these incidents, but he never received a copy reflecting that his grievances had been filed, which he alleges is "a violation of [his] constitutional rights." (*Id.*)

Plaintiff also asserts claims about the general conditions of his confinement when he was at MCC – which has since been closed – including that inmates were "denied law library"; "vents and windows are full of rust and dust"; inmates are denied cleaning supplies, and the facilities are sanitized only "when higher ups are walking around"; rodents and insects are "constantly in the cells"; "they weren't following the proper procedures for Covid" and detainees have had "limited access to family members" and "couldn't mourn properly" family members who "died since the Corona pandemic." (*Id.* at 8.) In addition, there were "multiple fires" at MCC during Plaintiff's stay; from April 2021 – June 2021, when Plaintiff was in SHU, inmates "c[a]me out a little more than 30 minutes every three days"; during searches and transfers, Plaintiff lost property with a value in excess of $1,000; flooding of wastewater into his cell

3

resulted in feces entering the cell; and his "confidential mail" was given to him already opened "on numerous occasions." (*Id.* at 9.)

Plaintiff sues MCC, and four former MCC Wardens (Marti Licon-Vitale, Charisma Edge, Robert Hazlewood, and N. Diaye), seeking damages.

## DISCUSSION

A federal inmate who suffers injuries related to his confinement generally has two potential theories for bringing a claim for money damages: the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

### A.     Federal Tort Claims Act

As set forth in the Court's order to amend (ECF 6), the FTCA: (1) abrogates sovereign immunity for claims brought against the United States but does not provide a cause of action against individual defendants, 28 U.S.C. § 2679(d)(1); (2) governs claims for negligent or tortious conduct – not claims for violations of the U.S. Constitution, *FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."); *Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019); and (3) requires exhaustion with the administrative agency (*e.g.*, the Bureau of Prisons) – a process that differs from the prison grievance process.

In Plaintiff's amended complaint, he again names individuals as defendants, but not the United States.[5] Even if the Court can treat Plaintiff's claims against federal officials in their official capacities as claims against the United States, Plaintiff's allegations suffer additional defects. Many of Plaintiff's allegations assert violations of his rights under the U.S. Constitution,

---

[5] In addition, MCC is not a proper defendant because it lacks the capacity to be sued.

4

such as the Due Process Clause. For example, Plaintiff invokes 42 U.S.C. § 1983, which applies to claims under the U.S. Constitution against state defendants but does not apply to federal defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[*Bivens*] is the federal analog to suits brought against state officials under [§ 1983]." Because the FTCA does not cover claims arising under the U.S. Constitution, these allegations do not state a cognizable FTCA claim, and the Court considers below whether Plaintiff's allegations that his constitutional rights were violated state a claim against Defendants under *Bivens*.

Finally, Plaintiff does assert some claims for negligence or other torts. He further alleges that he unsuccessfully attempted to use the prison's 4-step grievance process. Plaintiff does not allege, however, that he used the FTCA exhaustion process by submitting an Administrative Tort Claim to the appropriate BOP Regional Office, 28 C.F.R. § 543.31(b), and an appeal to the General Counsel's office, 28 C.F.R. § 543.32. Plaintiff's claims against the United States and federal officials that he was injured by the tortious conduct of federal officials, in violation of the FTCA, are therefore dismissed without prejudice for failure to exhaust his administrative remedies.[6] Any FTCA claims based on allegations of conduct in violation of the U.S. Constitution are dismissed with prejudice.

---

[6] FTCA claims must be "presented in writing to the appropriate Federal agency within two years after such claim accrues" and an FTCA action must be commenced within six months of when the agency issues its final denial of administrative remedy. *Roberson v. Greater Hudson Valley Family Health Ctr., Inc.*, ECF 1:17-CV-7325, 17, 2018 WL 2976024, at *2 (S.D.N.Y. June 12, 2018); *see also* 28 U.S.C. § 2401(b). The statute of limitations is non-jurisdictional and subject to equitable tolling. *United States v. Kwai Fun Wong*, 575 U.S. 402, 412 (2015), but the requirement that a claim be *presented* to the agency for administrative exhaustion is "jurisdictional, [and] cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005); *Foster v. Fed. Emergency Mgmt. Agency*, 128 F. Supp. 3d 717, 728 (E.D.N.Y. 2015) ("Failure to comply with [presentment] results in dismissal of the suit.").

B.     **Constitutional Claims Under *Bivens***

The Court construes Plaintiff's allegations that federal employees violated his constitutional rights as claims arising under *Bivens*. *See Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir. 2014) (holding that district court properly recharacterized section 1983 claims brought against federal employee as arising under *Bivens*). To state a claim for relief under *Bivens*, a plaintiff must allege facts that plausibly show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived him of a right, privilege, or immunity secured by the Constitution. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389).

Plaintiff's allegations can be construed as asserting claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment; deliberate indifference to unconstitutional conditions of confinement; and retaliation for the exercise of his rights under the First Amendment.

First, although the Supreme Court has recognized a *Bivens* action for a convicted prisoner's claims of inadequate medical treatment in violation of the Eighth Amendment, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017) (citing *Carlson v. Green*, 446 U.S. 14 (1980)), and presumably would recognize a *Bivens* remedy for the same claim by a pretrial detainee under the Fifth Amendment, it is unclear whether the Supreme Court would sanction implying a *Bivens* remedy for damages for Plaintiff's other claims, *id.* at 1857 ("[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity.").[7]

---

[7] The Supreme Court has recognized implied causes of action under *Bivens* in three contexts: (1) unreasonable search and seizure under the Fourth Amendment, *Bivens*, 403 U.S. 388 (1971); (2) employment discrimination under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) inadequate medical treatment of a convicted prisoner under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). *See Ziglar*, 137 S. Ct. at 1854-55. If a claim arises in a "new context" because it differs meaningfully

6

Next, *Bivens* relief against federal officials in their individual capacities is available only where the individuals were personally involved in the alleged constitutional violations. *Ziglar*, 137 S. Ct. at 1860. Here, all of the defendants are former wardens of MCC, and Plaintiff alleges that he "put certain defendants . . . because ([former Wardens] Marti Licon-Vitale, N. Diaye, Charisma Edge, Robert Hazlewood) were the higher executives who had the power to change a lot of foul play." (ECF 10 at 10.) As the Court previously advised Plaintiff, a defendant may not be held liable under *Bivens* solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

Finally, as set forth below, even if a *Bivens* remedy for damages were available and Plaintiff had made some allegation of a defendant's personal involvement, Plaintiff's allegations would nonetheless fail to state a claim for a violation of his constitutional rights.

1. Medical Care

Plaintiff alleges, for example, that he received inadequate medical care at MCC. A federal pretrial detainee's claim for deliberate indifference to his serious medical needs arises under the Fifth Amendment's Due Process Clause. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (establishing that claims by federal pretrial detainees under the Fifth Amendment are analyzed in the same manner as claims by state pretrial detainees under the Fourteenth

---

from a recognized *Bivens* claim, the Court must determine if it is appropriate to imply a new private right of action, including asking whether there are "special factors counselling hesitation" in doing so. *Id.* at 1857.

Amendment). To state a claim for constitutionally inadequate medical care, a plaintiff must plead facts showing that (1) the deprivation of medical care is objectively "sufficiently serious" in light of a medical condition "that may produce death, degeneration, or extreme pain," *Hill*, 657 F.3d at 122, and (2) "the defendant-official . . . intentionally . . . or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known," that the alleged medical condition "posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

      Plaintiff's allegations in the amended complaint regarding his medical issues are too vague to show that his medical needs were objectively sufficiently serious. He alleges that he was "neglected medical attention many times" but does not plead any facts about the medical problem(s) for which he was seeking care or the length of any delay in treatment.[8] Plaintiff also alleges that he was taken on and off unspecified medication but does not include any facts about the nature of the medication, the timeline, or what risk to him this posed. Plaintiff thus fails to show that he had an objectively serious medical need. Moreover, Plaintiff does not plead any facts suggesting that any of the defendants satisfied the subjective state of mind requirement. Plaintiff does not allege that any of the defendants, all of whom are former wardens rather than medical personnel, knew or should have known of his medical condition or the changes in his treatment. Plaintiff's allegations thus fail to state a claim that any defendant was deliberately indifferent to his serious medical needs.

---

[8] As set forth above, tort claims seeking damages from the United States (or its agencies and officers), such as claims for negligence or medical malpractice, arise under the FTCA and must be presented to the BOP for administrative exhaustion before filing suit.

2. Conditions of Confinement

Plaintiff pleads facts about the conditions of confinement at his former facility, such as the presence of dust, rust, and rodents; lack of cleaning supplies; flooding with wastewater; a lack of "proper procedures" to prevent the spread of Covid-19; and missed programming (recreation, out-of-cell time, and law library). In its earlier order to amend, the Court directed Plaintiff to plead facts in his amended complaint showing that the conditions, alone or in combination, posed a serious risk to his health and that one or more of the individual defendants knew or should have known of the serious risk. *Darnell*, 849 F.3d at 35. In this context, disregarding a serious risk means "failing to take reasonable measures to abate" the unconstitutional condition. *Farmer*, 511 U.S. at 847.

Plaintiff does not plead any facts about his own experience with Covid-19 or about the measures in place at MCC. Instead, he repeats his sole allegation that Defendants "weren't following the proper procedures for Covid." (ECF 10 at 8.) Plaintiff attaches a 58-page expert's report evaluating Covid-relief efforts at MCC during this period, which was submitted in support of a motion for a preliminary injunction in *Rodriguez v. Licon-Vitale*, ECF 1:20-CV-03315, 89 (S.D.N.Y. July 2, 2020) (order denying preliminary injunction in action seeking injunctive relief under 28 U.S.C. § 2241 because "the Court concludes that the inmates are not substantially likely to show that the MCC's failures were a result of deliberate indifference to their plight."). The main thrust of the report appears to be about difficulties with the execution of policies at MCC. Plaintiff's vague allegation that proper procedures weren't followed is insufficient to allege that any defendant acted with subjective deliberate indifference or to state a *Bivens* claim for damages.

Plaintiff has also not cured the other defects that the Court identified in his original complaint. Plaintiff continues to allege, for example, that facilities were adequately cleaned only

9

when "higher ups" were present (ECF 10 at 8), which undercuts Plaintiff's claim that the acting or former wardens personally knew or should have known of unconstitutional conditions at MCC. In sum, although Plaintiff alleges that he has endured difficult conditions during his detention, he does not plead facts showing that any defendant personally met the subjective element of a deliberate indifference claim and is liable for damages.

3. Retaliation

Plaintiff alleges that he was retaliated against for exercising his right to complain to his defense counsel about conditions at MCC, which Plaintiff suggests influenced litigation in *Rodriguez*, ECF 1:20-CV-03315. To state a First Amendment retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (citing *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir. 2009)). The Court assumes for purposes of this order that Plaintiff engaged in protected speech. Plaintiff alleges that after he made his complaints, his outgoing non-legal mail to his family was tampered with and the food he was served smelled "funny." (ECF 10 at 8.) Plaintiff has not alleged facts plausibly showing a causal connection between the mail or food issues and his protected speech – such as that these incidents were close in time or involved the same individuals. Plaintiff also does not plead any facts suggesting the personal involvement of any defendant in these matters.

Plaintiff does allege that that "the warden" played a role in relocating him after he complained about conditions at MCC. Plaintiff states that he was "removed from multiple cells on orders from the warden stating he couldn't be there." (ECF 10 at 10.) Plaintiff does not explain, however, why removal from a particular cell constitutes an adverse action. For example, it may be that after Plaintiff complained about pests or flooding in his cell, he was moved to a

different cell where he would not experience those problems. The allegations of Plaintiff's amended complaint are thus insufficient to state a claim that he was retaliated against for exercising his First Amendment rights.

For all of these reasons, Plaintiff fails to state a *Bivens* claim for damages based on his allegations of violations of his constitutional rights when he was at MCC.

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court granted Plaintiff an opportunity to amend his complaint to plead facts showing Defendants' personal involvement in violating his rights (ECF 6), but his amended complaint was substantially the same as the original complaint and did not cure any of the deficiencies that the Court identified. The Court therefore declines to grant Plaintiff a further opportunity to amend as it appears that it would be futile to do so.

## CONCLUSION

The Court dismisses Plaintiff's FTCA claims without prejudice for failure to exhaust his administrative remedies. Plaintiff's *Bivens* claims are dismissed, under 28 U.S.C. 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant

demonstrates good faith when he seeks review of a nonfrivolous issue). The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Dated:  February 8, 2022
        New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge